UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM JESSE IBARRA,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>ROBLES, et al.,<br><br>　　　　　Defendants. | 1:20-cv-01433-GSA-PC<br><br>**SCREENING ORDER**<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br>**(ECF No. 1.)**<br><br>**THIRTY-DAY DEADLINE TO FILE A FIRST AMENDED COMPLAINT** |

**I.　　BACKGROUND**

　　Adam Jesse Ibarra ("Plaintiff") is a jail inmate proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on October 8, 2020.  (ECF No. 1.)  Plaintiff's Complaint is now before the court for screening.  28 U.S.C. § 1915.

1

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF COMPLAINT

Plaintiff is presently detained at the Bob Wiley Detention Facility (BWDF) in Visalia, California. The events at issue in the Complaint allegedly occurred at three facilities, (1) BWDF, (2) the South County Detention Facility in Porterville, and (3) the Main Jail in Visalia, California.

Plaintiff does not indicate whether he was a pretrial detainee or serving a sentence of confinement at the three facilities during the events at issue in the Complaint. In an amended complaint, Plaintiff must identify his status at those facilities during the relevant time periods.

Plaintiff names as defendants Lieutenant Cyrena Robles (Tulare County Sheriff Deputy), Lieutenant D. Winters (Tulare County Sheriff Deputy), M. Sierosma (Tulare County Sheriff Deputy), and Christopher Salcedo (Parole Agent) (collectively, "Defendants"). A summary of Plaintiff's allegations follows:

Plaintiff was arrested on or about September 20, 2019. On November 7, 2019, he was housed at the South County Detention Facility in Porterville in the General Population with other inmates labelled Northern Hispanic. Plaintiff noticed that Northern Hispanic inmates were not being given equal opportunities for job/work assignments, classes, or programs as other classifications of inmates. Plaintiff spoke up and filed grievances in an attempt to resolve this matter. He had discussions with Deputies as to fair treatment and was told that he did not meet the criteria to participate in this facility's programs. On November 7, 2019, Plaintiff had an exchange of words with the Floor Deputy during dinner tray pass-out at about 4:30-5:00pm. At about 7:00pm, two Deputies came to Plaintiff's cell and asked him to cuff up because the Sergeant wanted to speak with him. Sergeant Cardenas [not a defendant] told Plaintiff he was going to be transferred to a different facility because Defendant Lt. Robles did not want Plaintiff at the Porterville facility and was transferring him for "threats to officers." Compl at 1. Instead of being taken to the "hole" at the Porterville facility, where inmates who misbehave are placed, or being taken to BWDF where there is a segregation unit for inmates who misbehave, Defendant Lt. Robles arranged an emergency adverse transfer for Plaintiff to the Main Jail in Visalia. In Visalia, Plaintiff was placed in solitary confinement, Single Cell Level 5.

Plaintiff was never written up or given a legitimate reason why he was transferred, only that he had made threats to officers in South County. Plaintiff was not afforded due process, and no disciplinary action was taken against him for making threats other than transferring him to the Main Jail. On Level 5, Plaintiff's life was in danger because he was placed on the same tier with inmates who did not welcome him. He knew he was in harm's way. He filed grievances complaining about his transfer and housing. On November 15, 2019, Plaintiff was involved in a physical altercation with another inmate where Plaintiff suffered physical injury.

///

Plaintiff's first grievance about his transfer and dangerous housing was exhausted to the highest level to Step C, Facility Commander Review by Defendant Lt. Winters.  On November 13, 2019, Defendant Winters told Plaintiff he was classified appropriately at the facility and would be reviewed in 30 days.   Plaintiff was a General Population inmate being housed in a hostile environment with Protective Custody inmates.  Defendant Winters knew about the risks to Plaintiff's safety and clearly ignored the high potential for violence.  Two days later, Plaintiff was involved in a physical altercation.

Prior to the altercation, Plaintiff spoke to Sergeant Celeya [not a defendant] about a parole hold that had mysteriously shown up in the Tulare County Sheriff Department's computer system, placed on Plaintiff by his parole agent Defendant Christopher Salcedo for no apparent reason other than Plaintiff's transfer for threats to officers.  Plaintiff's original parole hold had been lifted while he was in South County, but when he was transferred on November 7, 2019, the new hold appeared preventing him from posting bail to leave his dire situation at the Main Jail.  Plaintiff's parole agent Salcedo claimed he did not know why there was a hold, but Plaintiff believes that Salcedo intended to keep him in a bad situation for threatening officers.  Salcedo knew that Plaintiff was attempting to post bond.

Plaintiff's altercation on November 15, 2019 was between Plaintiff and another inmate (Porter), a few hours after Plaintiff spoke to sergeant Celeya.  While Plaintiff was in a holding cell, Celeya told him that Plaintiff's parole agent was working on lifting the hold, but due to the recent altercation Salcedo was going to place a new hold on Plaintiff.

On November 15, 2019, Plaintiff filed a second grievance about the risk of violence against him.  Plaintiff wonders how he was in a position to have an altercation since he was classified Single Cell Level 5, meaning he was not allowed to be out of his cell except under deputy escort and with restraints.  Plaintiff voiced his concern, but Defendant Lt. Winters refused to transfer him away from the Visalia Main Jail.

On November 15, 2019, the deputy on shift was Defendant M. Sierosma who controlled all of the panels that opened and closed the cell doors and showers.  Per Tulare County policy and procedures, Level 5 single cell inmates are considered a threat and may only be removed

from their cells in constraints and with an escort. However, some Deputies were lax and allowed inmates out of their cells without constraints or escort. On November 15th, Deputy Sierosma was conducting showers for all inmates on the fourth floor. Sierosma popped open Plaintiff's cell door so he could walk down the tier to the shower. Plaintiff entered the shower and Sierosma closed and secured the shower using the control panel. Sierosma was the only one with access to the control box.

Protective Custody and General Population inmates (such as Plaintiff) are incompatible and should not encounter each other, or be out on the tier at the same time without constraints or escort. Plaintiff finished his shower and was ready to return to his cell, so he called to Deputy Sierosma who opened the shower door. Plaintiff stepped out and headed back to his cell 433. While Plaintiff was enroute, Deputy Sierosma popped open inmate Porter's cell 432. Porter, who was of a different classification, stepped out of his cell and an altercation ensued. The width of the tier is about 4 feet, with no flight option for either inmate, and the two inmates were stuck in the confined space. Deputy Sierosma did not come onto the tier to stop the incident until back-up officers arrived. The inmates were ordered to stop fighting and to get down, and one of the deputies fired a taser hitting inmate Porter. The inmates were cuffed and escorted to medical where their wounds were cleaned and dressed. Plaintiff alleges that Deputy Sierosma's negligence placed his life at risk and caused him personal injury.

Plaintiff seeks as relief monetary damages, including punitive damages, and injunctive relief.

**IV.    PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

///

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

///
///
///
///
///

### A. **Pretrial Detainees**

Plaintiff was likely a pretrial detainee during the events at issue in the Complaint.[1] "[P]retrial detainees . . . possess greater constitutional rights than prisoners." Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992); see also Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987). "If a plaintiff "had not been convicted of a crime, but had only been arrested, [then] his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment." Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002); see also Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979) (noting that "the Due Process Clause rather than the Eighth Amendment" is relied upon in considering claims of pretrial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions").

Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate pretrial detainees' rights to be free from punishment. See Block v. Rutherford, 468 U.S. 576, 584 (1984) (citing Bell, 441 U.S. at 538-39); Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Demery v. Arpaio, 378 F.3d 1020, 1028-29 (9th Cir. 2004) (holding that streaming live images of pretrial detainees to internet users around the world through the use of world-wide web cameras was not reasonably related to a non-punitive purpose, and thus, violated the Fourteenth Amendment); Simmons v. Sacramento Cnty. Super. Ct., 318 F.3d 1156, 1160-61 (9th Cir. 2003); Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002); White v. Roper, 901 F.2d 1501, 1504 (9th Cir. 1990); see also Florence v. Board of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510, 1515-16 (2012). Order and security are legitimate penological interests. See White, 901 F.2d at 1504.

///

///

---

[1] Plaintiff must identify, in an amended complaint, his status during the relevant time periods.

### B. Retaliation – First Amendment Claim

Prisoners [and pretrial detainees] have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Short v. Sanzberro, No. 1:09-cv-00996-OWW-GSA PC, 2009 WL 5110676, at *5 (E.D. Cal. Dec. 18, 2009) ("Civil detainees are protected from retaliation by the First Amendment."); see Herrick v. Quigley, No. 3:15-cv-05016-RBL-KLS, 2016 WL 7324288, at *9 (W.D. Wash. Nov. 2, 2016) ("Retaliation is not proven by simply showing that a defendant . . . took adverse action after he knew that the plaintiff prisoner had engaged in constitutionally protected activity.")

Plaintiff claims that he was retaliated against by being transferred to another facility by Defendant Robles because Plaintiff made threats against prison officials and Defendant Robles did not want Plaintiff to stay at the Porterville Detention Facility. Plaintiff cannot state a claim for retaliation because he was transferred after he made threats to officials. Making threats against officials is not a protected activity.

Plaintiff also alleges that he filed prison grievances complaining about his transfer, his housing, and unfairness to Northern Hispanic inmates. However, Plaintiff has failed to demonstrate a causal nexus between the alleged retaliation and his constitutionally protected activity. Plaintiff has not shown that any of the Defendants took adverse actions against him *because* he filed appeals. The mere statement that a Defendant "retaliated" against him or acted "in retaliation" is not sufficient to state a claim. Therefore, Plaintiff fails to state a claim for

///

1  retaliation against any of the Defendants.  Plaintiff shall be granted leave to file an amended
2  complaint to address the deficiencies in this claim.

3       **C.**      **Equal Protection – Fourteenth Amendment Claim**

4  The Equal Protection Clause requires the State to treat all similarly situated people
5  equally.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87
6  L.Ed.2d 313 (1985).  This does not mean, however, that all prisoners must receive identical
7  treatment and resources.  See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d
8  873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

9  "To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts
10 plausibly showing that '"the defendants acted with an intent or purpose to discriminate against
11 [him] based upon membership in a protected class,"' (citing see Thornton v. City of St. Helens,
12 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th
13 Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a
14 rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553
15 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564,
16 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North
17 Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

18 Plaintiff claims that inmates classified as Northern Hispanic, such as himself, were not
19 being given equal opportunities for job/work assignments, classes, or programs as other
20 classifications of inmates.  However, Plaintiff has not alleged facts demonstrating that he was
21 intentionally discriminated against on the basis of his membership in a protected class, or that he
22 was intentionally treated differently than other similarly situated inmates without a rational
23 relationship to a legitimate state purpose.  Therefore, Plaintiff fails to state a claim for relief for
24 violation of his right to equal protection.

25       **D.**      **Due Process**

26 The Due Process Clause protects against the deprivation of liberty without due process
27 of law.  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005).  In order to invoke
28 the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty

interest for which the protection is sought.  Id.  Liberty interests may arise from the Due Process Clause itself or from state law.  Id.

Pretrial detainees have due process protection for conduct that amounts to punishment. Bell, 441 U.S. at 535.  But, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense.  Id. at 537.  "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  Id. at 539.

Plaintiff alleges that he was not given due process before he was transferred to another facility for making threats to officials.  When process is required because conduct does amount to punishment, the process must include notice of the charges 24 hours before hearing, an opportunity to present documentary evidence and call witnesses, and a written statement from the factfinders as to the evidence relied upon and the reason for the disciplinary action taken. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974).

**Discussion**

Plaintiff may be able to state a claim for violation of due process.  Before the court can determine if a cognizable claim exists, Plaintiff must first inform the court whether he was a pretrial detainee or a convicted prisoner when he was transferred.  Second, Plaintiff must allege more facts about the jail's claim that he made threats to officers in South County and Plaintiff's allegations that Defendant Lt. Robles did not want Plaintiff at the Porterville facility and was transferring him for "threats to officers."

**E.     Prison Appeals Procedures**

Plaintiff alleges that he filed grievances complaining about his transfer, housing, and risk of harm.  To the extent that Plaintiff seeks to state a claim based on the review and handling of his grievances, Plaintiff fails to state a claim.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff, 418 U.S. at 556.  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by

the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005), accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that Defendants failed to properly process Plaintiff's appeals fail to state a cognizable claim.

F. **Conditions of Confinement/Failure to Protect**

If Plaintiff was not a convicted inmate at the time of the allegations, the standards set forth under the Fourteenth Amendment apply to his claims for adverse conditions of confinement. The Fourteenth Amendment protects the rights of pretrial detainees. Bell, 441 U.S. at 545.

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Demery, 378 F.3d at 1029 (9th Cir. 2004) (quoting Bell, 441 U.S. at 535).

During the period of detention prior to trial, a pretrial detainee may be properly subject to the conditions of the jail so long as they do not amount to punishment. Norris v. Youngblood, No. 121CV00704NONESABPC, 2021 WL 4804041, at *2 (E.D. Cal. Oct. 14, 2021) (citing Bell, 441 U.S. at 536–37). "Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'" Id. (citing Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982))). To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. Id. (citing Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018)).

**Discussion**

Plaintiff may be able to state a claim for adverse conditions of confinement. Plaintiff must first inform the court whether he was a pretrial detainee or a convicted prisoner when he was transferred. Second, Plaintiff must allege more facts about his conditions in segregation, the dangers he faced at the Main Jail, and the conduct of each Defendant who made decisions with respect to the conditions under which Plaintiff was confined.

**G.     Negligence – State Law Claim**

Plaintiff brings a negligence claim against Defendant Sierosma. Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir.

2007).  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.

To state a cognizable state law claim, Plaintiff must sufficiently plead the claim presentation requirement contained in California Government Code § 900 et seq. California's Government Claims Act establishes certain conditions precedent to the filing of a lawsuit against a public entity.  State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1237, 90 P.3d 116, 118 (2004). "[A] plaintiff must timely file a claim for money or damages with the public entity, (§ 911.2.), and the failure to do so bars the plaintiff from bringing suit against that entity, (§ 945.4.)." Id.

Compliance with the claim presentation requirement is an element of the cause of action, Id. at 1240, and is required, Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir. 1995), and "failure to file a claim is fatal to a cause of action," Hacienda La Puente Unified School Dist. Of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992); City of Stockton v. Superior Court, 42 Cal.4th 730, 738 (Cal. 2007) at 738; Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007).

The government claim must be filed or presented to the public entity no later than six months after the cause of action accrues. California Government Code § 911.2.  A plaintiff "must allege facts demonstrating or excusing compliance with the claim presentation requirement." Robinson v. Alameda Cty., 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (quoting Bodde, 32 Cal.4th at 1243; Mangold, 67 F.3d at 1477 (quoting Snipes v. City of Bakersfield, 145 Cal.App.3d 861, 865, 193 Cal.Rptr. 760 (1983) ("Where compliance with the [CGCA] is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general demurrer.")); D.K. ex rel. G.M. v. Solano County Office of Education, 667 F.Supp.2d 1184, 1195 (E.D. Cal. 2009); Karim–Panahi v. Los Angeles Police Department, 839 F.2d 621, 627 (9th Cir. 1988); Flanagan v. Benicia Unified School District, 2008 WL 435355 (E.D .Cal. Feb. 14, 2008)).

In the present case, Plaintiff has not alleged compliance with the Government Claims Act in his Complaint. Therefore, Plaintiff fails to state a cognizable negligence claim.

**V.      CONCLUSION AND ORDER**

For the reasons set forth above, the court finds that Plaintiff's Complaint fails to state a cognizable claim against any of the Defendants. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Plaintiff shall be granted leave to file an amended complaint to cure the deficiencies in his claims identified by the court.

Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named Defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d. 930, 934 (9th Cir. 2022). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on October 8, 2020.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Complaint, filed on October 8, 2020, is dismissed for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within thirty days of the date of service of this order, Plaintiff is required file a First Amended Complaint;
4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:20-cv-01433-GSA-PC; and
5. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed in its entirety.

IT IS SO ORDERED.

Dated:  **March 7, 2022**              /s/ Gary S. Austin
                                    UNITED STATES MAGISTRATE JUDGE